UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD HAYNOR,

       Plaintiff,                      CIVIL ACTION NO. 8-14941

  vs.                                DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Defendant's Motion for Summary Judgment (docket no. 10) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 7) be DENIED, and the instant complaint DISMISSED as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work prior to June 30, 1988, when his insured status expired.

\*\*\*

**II.    PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability and Disability Insurance Benefits on March 9, 2006, alleging that he had been disabled and unable to work since June 1, 1986 due to back pain[1]. (TR 14, 50, 55, 63, 69-70, 218). Plaintiff's claim was initially denied. (TR 36, 44). Following a February 6, 2008 hearing, Administrative Law Judge John L. Christensen ("ALJ") found that the

---

[1]Plaintiff requested that the alleged onset date be changed from June 1, 1989 to January 27, 1983. (TR 63, 218). Plaintiff reported that he became unable to work as of August 19, 1978. (TR 69).

1

claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability at any time from January 27, 1983 through the June 30, 1988 date last insured. (Docket no. 14, 20, 212).  The Appeals Council denied Plaintiff's Request for Review.  (TR 3-5). Plaintiff commenced the instant action for judicial review.  The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.  Plaintiff must establish that he became disabled on or before June 30, 1988, the date his insurance status expired.  42 U.S.C. § 416(i), 20 C.F.R.§§ 404.131(a), 404.320(b)(2).  The parties do not dispute Plaintiff's date last insured.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's Testimony and Reports

Plaintiff was sixty-one years old at the time of the hearing.  (TR 221).  Plaintiff has a high school education, attended Air Force electronic warfare school following high school and had specialized training as a heavy equipment operator.  (TR 221-22).  Plaintiff testified that he last worked in 1979 on drill presses, when he worked for three days in a shop.  (TR 223).  Plaintiff worked in production at an automotive plant in 1977 and receives workers' compensation.  (TR 223).  Plaintiff testified that he stopped working when he was injured in the factory.  (TR 224).  He testified that as a result of the injury he was unable to concentrate due to pain, he could not sit or stand and he suffered severe pain in his back, neck, shoulders and leg.  (TR 224).           Plaintiff does not have any restrictions on his driver's license and he drove himself to the hearing. (TR 221). Plaintiff testified that in the mid-1980's he lived in a first floor apartment with his two children.  (TR 226).  He and his daughter were able to perform grocery shopping and housework.  (TR 226). Plaintiff testified that at that time he was unable to sleep due to pain in his back, shoulders and legs.

(TR 226). He confirmed that he treated his pain with Percodan and Vicodin, which curbed the pain but "never really helped." (TR 226). The medications caused him to be sleepy and "sometimes a little nauseous." (TR 226). Plaintiff took an average of three naps per day lasting a total of three hours. (TR 227). Plaintiff testified that at that time he could sit for an average of twenty minutes at a time before he would get up and move around and he could stand and walk an average of thirty minutes. (TR 227). Plaintiff was able to lift a gallon of milk but nothing heavier. (TR 228).

Plaintiff testified that his pain affected his upper extremities and he had difficulty pulling and pushing and reaching overhead. (TR 228). He agreed that he had problems with grip strength, opening lids and holding onto objects. (TR 228). He testified that he did not have any energy during that time.

At the time of the hearing Plaintiff wore a back brace and had been using a TENS unit for two years. (TR 229). He testified that in the mid-eighties he also wore the back brace. (TR 229). Plaintiff testified that there was no job he could have performed in the mid-eighties on a full time basis eight hours per day, five days a week for forty hours a week because he could not concentrate, he was angry because he was in pain and he could not sit still. (TR 230).

### B.     Medical and Record Evidence

Plaintiff's medical records go back to 1971. Plaintiff complained of low back pain as early as October 4, 1972. (TR 153). The doctor concluded noted that Plaintiff may have pulled a muscle in the low back and prescribed Robaxin and Darvon. (TR 153). In October 1978, Plaintiff reported to the hospital with leg and back pain and his provisional diagnosis was sacral radiculopathy. (TR 114). On October 30, 1978, Ted. S. Keller, M.D., and Glenn W. Kindt, M.D., at the University Of Michigan examined Plaintiff at the request of Plaintiff's doctor Gerald S. Buchanan, M.D. (TR 112-13). The doctors noted that Plaintiff reported tiredness and aching sensations in his legs and forelegs

with throbbing pain progressing to his calves and feet.  Plaintiff reported that the pain and tiredness began several months after he started working in August of 1977 as a manual laborer for an automobile manufacturer.  (TR 112).  Plaintiff reported being off work for seven months and despite attempting to return to work, he was not able to work for more than one hour at a time.  (TR 112, 116-17).  The doctors noted that examination of Plaintiff's lumbar spine showed no paravertebral spasm or list, range of motion was full, straight-leg raising was negative bilaterally, motor examination showed no focal weakness, sensory examination was intact to all modalities and deep tendon reflexes were absent at the knees and ankles.  The doctors noted that Plaintiff's condition may not improve in a job involving a great deal of manual labor and could worsen over the years and that Plaintiff did not want to change his line of work.  (TR 113).  Plaintiff was advised to follow-up in three months and to notify the doctors should he reconsider the option of myelography and surgery.  (TR 113).

In 1982 Plaintiff underwent an upper gastrointestinal survey and D.R. Limbach, M.D., concluded that Plaintiff had chronic gastroduodenitis, ulceration of the duodenal bulb and postbulbar duodenum, and evidence of subacute enteritis.  (TR 131).  A December 1983 x-ray of the chest and cervical spine was negative.  (TR 121).

The record contains Dr. Roome's treatment notes for periodic examinations of Plaintiff from 1984 to 1992.  (TR 138, 142-43, 145).  Plaintiff treated with other physicians at the same clinic during the time period from 1982.  (TR 138-147, 151-53).  From December 1982 through 1987 Plaintiff was treated for peptic ulcer disease and was prescribed Tagamet and Drixoral.  (TR 118, 122-29, 141-46, 152-53).  Plaintiff also treated for skin-related conditions during the same time period.  In October 1986 Plaintiff underwent x-rays of a lump on the anterior tibia of his right leg following his complaints of the same.  (TR 130).  Plaintiff was treated for dermatitis in February

1992.  (TR 151-53).  Dr. Roome, M.D., provided a note "To Whom It May Concern," stating that Plaintiff

> "[I]s a patient of mine and has been disabled for quite sometime now from a work related neck injury.  I did see him at 9:30 of 1988 and 10:07 of 1980 for this neck problem at the Fenton Medical Center at which time he had acute neck pain and acute torticollis.  At that point he was already disabled for quite sometime and was already unable to work.  It should be noted during this time that I had already seen him at the Fenton Urgent Care Clinic at that time because of an urgent flare up of his neck and neck pain.  (TR 137).

The records from Dr. Roome and his associates are set forth in further detail in the analysis below.

In December 1982 Plaintiff complained of muscle spasm on the left side of the neck and into the back of his scapula.  (TR 152).  In early January 1983 Plaintiff continued to complain of pain in the neck and shoulder area, with some tingling in the left arm.  (TR 151-52).  The doctor noted that Plaintiff's lower back was better, Plaintiff would continue his PT and he was "improving."  (TR 152).  Plaintiff was prescribed Demerol and Vistaril for pain in the neck and shoulder area and Valium to aid with relaxation.  (TR 151).  Plaintiff was prescribed Emperin #4, which he reported did not provide relief, and Plaintiff was later prescribed Percodan.  (TR 151).  On January 12, 1983 Plaintiff underwent an EMG of the left upper extremity.  Jack R. Grommans, M.D., concluded that the "electrodiagnostic studies suggest the probability of a spinal cord or root lesion or damage affecting the C/7 myotome on the left."  (TR 134).  Dr. Grommans noted that "[m]otor and sensory nerve conduction studies of the left ulnar and median nerves" showed values that "are generally normal throughout with the exception of a border line median latency at the wrist, but the change is not of a magnitude that may be regarded as of diagnostic significance."  (TR 134).

On January 27, 1983 Plaintiff was examined by S.V. Ramana Reddy, M.D., M.S., on referral from J. Martin, M.D.  (TR 148-49).  Dr. Reddy noted that Plaintiff had reported "a history of neck pain radiating along the upper extremity associated with paresthesia of (sic) left hand the past three

5

weeks." (TR 148). Dr. Reddy noted "considerable spasm of the paraspinal muscles and trapezius on the left side of the neck," minimal restriction in movement of the cervical spine, no evidence of muscle atrophy or fasciculations, and cervical spine movement was "possible to normal range but elicited discomfort in the extremes of range of movement." (TR 149). The doctor diagnosed "cervical disc protrusion with left C7 radiculopathy." (TR 149). He noted that Plaintiff was "improving under conservative management," so Plaintiff should "continue on the present line of management with analgesics and home cervical traction for the next two to three weeks." Plaintiff was advised to wear a soft cervical collar and the doctor would proceed with a myelography if Plaintiff's symptoms persisted or he developed a worsening neurological deficit. (TR 149).

In October 1988 Plaintiff underwent an EMG of the right upper extremity which was negative and normal. (TR 132). In November 1988 Plaintiff was examined by J.P. Femminineo, M.D., upon a referral from Dr. Roome. Plaintiff complained of severe neck and right arm pain after he fell asleep in an awkward position. (TR 139). The doctor reported that Plaintiff's medications at that time were Tagamet and Percodan. (TR 139). Dr. Femminineo concluded that Plaintiff "exhibits signs and symptoms of probably chronic low grade right C7 radiculopathy with signs and symptoms as well of a chronic pain syndrome." (TR 140). Dr. Femminineo's notes are set forth in further detail below. November 1988 x-rays of the cervical spine were negative and there was no herniated disc. (TR 154).

Plaintiff treated with Gavin I. Awerbuch, M.D., from April 2003 through December 2007. (TR 164-212)[2]. The record contains an October 12, 2005 note from Gavin I. Awerbuch, M.D.,

---

[2] Plaintiff has not raised Dr. Awerbuch's records as an issue in his Motion for Summary Judgment and the earliest of Dr. Awerbuch's records post-dates the date last insured by nearly fifteen years. Plaintiff does not argue that any of Dr. Awerbuch's records relate to the period on or before Plaintiff's date last insured. The Court has reviewed and considered Dr. Awerbuch's

written on a prescription pad and stating simply, "Patient is totally + permanently disabled."  (TR 136).

    **C.**    **Vocational Expert Testimony**

The ALJ asked the Vocational Expert (VE) to consider an individual of the same age, education and work experience as Plaintiff with the ability to do sedentary work limited to no use of either lower extremity for pushing or pulling, including the use of foot controls, no use of vibrating tools, only occasional use of either upper extremity for reaching, handling, grasping or fingering and limited to performing simple, routine tasks.  The ALJ asked the VE to consider the hypothetical questions in the period of time from January 27, 1983 through June 30, 1988.  (TR 233).   The VE testified that the primary limitation on the sedentary range of work was the limitation to only occasional use of the upper extremity.  (TR 233).  The VE testified that such an individual could perform surveillance system monitor (300 regional jobs in the entire lower peninsula of the

---

records from this time period and they do not relate to the period on or before Plaintiff's date last insured.  To the extent that some of the records (Dr. Awerbuch's records from March 15, 2007, June 14, 2007 and December 19, 2007, a February 1, 2008 physical medical source statement and duplicate MRI's of the cervical and lumbar spine ) were submitted by Plaintiff's counsel after the date of the ALJ's February 13, 2008 decision in this matter, Plaintiff has not asked for a sentence six remand pursuant to 42 U.S.C. § 405(g), has not shown any reason for his failure to produce the records prior to the ALJ's hearing and the records do not relate to the relevant time frame, are not new and are not material.  *See  Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial."  *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)).     The Court also notes that Dr. Awerbuch in his April 9, 2003 examination noted that Plaintiff had seen "Dr. Reddy a neurosurgeon, who put him off work permanently . . . ."  (TR 177).  The record contains one report from Dr. Reddy dated January 27, 1983 which opens by thanking Dr. Martin for referring Plaintiff to Dr. Reddy, thus indicating that this was Plaintiff's first examination with Dr. Reddy.  (TR 148).  Dr. Reddy's opinions are set forth in detail above, but there is no evidence that Dr. Reddy put Plaintiff "off work permanently."  (TR 148-49). Dr. Reddy noted that Plaintiff was "improving under conservative management."  (TR 149).

State of Michigan), credit clerk (500 regional jobs) and general office clerk (2000 regional jobs). (TR 234). The VE testified that the jobs conform to the descriptions found in the Dictionary of Occupational Titles (DOT). (TR 234).

The ALJ also asked the VE to consider an individual of the same age, education and work experience as Plaintiff with the ability to perform sedentary work limited as set forth in the prior hypothetical question, but with the additional limitation that "as a result of pain, medication required for pain and fatigue secondary to pain, that individual cannot sustain sufficient concentration, persistence and pace to do any simple routine tasks on a regular continuing basis," which would include eight hours per day, five days per week, forty hours per week. (TR 234). The VE testified that there would be no jobs available. (TR 234).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since June 1, 1986, met the insured status requirements of the Social Security Act until June 30, 1988 and suffered from a history of leg pain, lumbar stenosis and cervical radiculopathy, he did not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments. (TR 16). The ALJ found that Plaintiff was not entirely credible and prior to the expiration of his insured status, he retained the ability to perform a limited range of sedentary level work. (TR 18-20). The ALJ concluded that there are jobs that exist in a significant number in the national economy that Plaintiff could have performed. (TR 19-20).

## V.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

      **B.**    **Analysis**

*1.*    ***Scope of the Court's Review***

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

    (1)    he was not presently engaged in substantial gainful employment; and

    (2)    he suffered from a severe impairment; and

>    (3)   the impairment met or was medically equal to a "listed impairment;" or
>
>    (4)   he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f) (2009). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ erred in assessing his medical records, resulting in an inaccurate hypothetical question presented to the VE. Plaintiff asks the Court to reverse the ALJ's decision and remand the claim for calculation and payment of SSI benefits, or, in the alternative, remand the claim for further proceedings. (Docket no. 7).

## 2.   *Whether Substantial Evidence Supports the ALJ's Findings With Respect To The Medical Record*

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's medical records for the time period between the January 1983 onset date and the June 1988 date last insured (the "relevant period"). (Docket no. 7 at 10 of 14). Plaintiff argues that the ALJ improperly rejected Dr. Roome's May 11, 2006 letter referencing the time period in question and stating that Plaintiff "has been

10

disabled for quite sometime now from a work related neck injury."[3] (TR 137). Plaintiff points out that Dr. Roome's examination notes during the relevant period are part of the record.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e). Therefore, the ALJ did not err in failing to adopt Dr. Roome's conclusory statement in the May 2006 letter that Plaintiff "has been disabled for quite some time." (TR 137).

Defendant argues that Dr. Roome only performed two examinations related to the neck pain and his other examinations were unrelated to Plaintiff's neck pain. Therefore, argues Defendant, Dr. Roome does not have the longitudinal view of Plaintiff's neck condition "for which treating sources are valued." (Docket no. 10 at 15 of 22).

Plaintiff is correct that the record contains Dr. Roome's notes of Plaintiff's office visits between March 1983 and February 1992. (TR 138, 141-47). As Defendant points out, however, Dr. Roome's May 2006 note references visits in 1980 and 1988. These are the only two visits in

---

[3]Plaintiff refers to "Dr. Rome" throughout his brief, who is presumably "Dr. Roome." (Docket no. 7 at 10 of 14, TR 137-38).

11

which Dr. Roome treated Plaintiff related to Plaintiff's neck pain. The 1980 visit pre-dates the relevant period and the 1988 visit post-dates the date last insured. *See Heston v. Comm'r Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (The doctor's report was based on a summary of claimant's medical history, his last examination of claimant was in February of 1992 and claimant's relevant period for establishing disability was between November 17, 1992, and June 30, 1994. "Although medical history is relevant to a claimant's condition, [Dr.] Heston's medical history should not be given more weight than that of a doctor observing plaintiff during the relevant period of disability."). The remainder of Dr. Roome's examinations during the relevant time period relate to a bone cyst on Plaintiff's anterior tibia, a peptic ulcer for which Plaintiff was hospitalized and skin conditions. (TR 141-43). Despite Defendant's argument that Dr. Roome is not a treating source because he only examined Plaintiff twice related to neck pain, that evidence is relevant to both longitudinal treatment for Plaintiff's neck pain and the corresponding lack thereof. Dr. Roome did not note complaints related to Plaintiff's neck pain at the other examinations which occurred during the relevant period. It is also noted that Dr. Roome provided the May 2006 letter nearly 18 years after the latest exam date on which Dr. Roome relies for his opinion, and he did not provide an objective basis for his conclusory statement that Plaintiff has been disabled for quite some time.

To the extent that Plaintiff argues that the ALJ did not address Dr. Roome's examination notes, the record shows that Dr. Roome practiced at the Fenton Medical Center with Dr. Buck Buchanan, Dr. James Martin, and Dr. Duane Bailey and Plaintiff treated with Dr. Roome and other physicians at the Fenton Medical Center from as early as January 1971 to February 1992. (TR 137-147, 150-53). The ALJ addressed Dr. Martin's examination of Plaintiff on January 14, 1983 and note that Plaintiff complained of pain and spasms in the cervical spine. (TR 17). The ALJ correctly pointed out that Plaintiff required very little treatment during the relevant period. (TR 18). As noted

above, much of the treatment during the relevant time from Dr. Roome and his fellows was unrelated to Plaintiff's neck and back pain and included multiple complaints of skin conditions and peptic ulcer symptoms.

Plaintiff points out that a January 1983 EMG was an examination of the left upper extremity which "was read as suggesting spinal cord lesion or damage affecting C7 myotome on left." (Docket no. 7, pp. 11 of 14, TR 134, 150). The statement to which Plaintiff refers was made by J.A. Martin, M.D., upon review of the EMG. (TR 150). As evidenced by Dr. Martin's statement, the EMG studies "suggest the probability of" a spinal cord or root lesion or damage affecting the C7 myotome on the left, but are not conclusive evidence of the same. (TR 134). Following this examination, Dr. Martin referred Plaintiff to Ramana Reddy, M.D. ( (TR 150). Dr. Reddy concluded that Plaintiff had "cervical disc protrusion with left C7 radiculopathy" and noted that Plaintiff was "improving under conservative management," so Plaintiff should "continue on the present line of management with analgesics and home cervical traction for the next two to three weeks." (TR 149).

The ALJ also considered the October 17, 1988 electrodiagnostic examination, performed after the date last insured, for which Dr. Roome was the referring physician. Plaintiff argues that the exam was performed on the right upper extremity despite the ALJ noting that the EMG exam was performed on the cervical spine. The results of the examination were normal and demonstrated normal motor and sensory nerve conduction studies of the right upper extremity. (TR 132). The Court finds that the ALJ's statement was harmless error where the complete examination was actually negative, showed normal results and Jack R. Grommons, M.D., noted in the summary that the examination was "[u]nable to demonstrate evidence suggestive of possible cervical radiculopathy or other lower motor or sensory neuron disease or damage, at this time." (TR 132-33). Furthermore, the sampled muscles represented the "C5-T1 anterior and posterior myotomes." The ALJ did not

13

use this exam alone to determine Plaintiff's limitations and in fact the ALJ included limitations to Plaintiff's upper and lower extremities in the RFC, supported in part by the 1983 MRI of the upper left extremity. Furthermore, a November 1, 1988 x-ray of the cervical spine was negative. There was no herniated disc, central canal measurements were normal, facet joints were unremarkable and neural foramen were free of osteophytes. (TR 154).

Plaintiff also argues that when he was examined on November 23, 1988 by J. P. Femminineo, M.D., following a referral by Dr. Roome, he was diagnosed with "signs and symptoms of probably a chronic low grade right C7 radiculopathy with signs and symptoms as well of a chronic pain syndrome." (Docket no. 7). Plaintiff correctly cites Dr. Femminineo's diagnosis. The doctor's summary states that Plaintiff complained "of approximately 2 ½ month history of severe neck and right arm pain" and reported that his neck problems developed in 1978. (TR 139). The doctor also noted that Plaintiff "was doing fairly well in a steady state of health until approximately 2 ½ months ago. Apparently, he fell asleep in an awkward position. Upon awakening he had severe neck pain with pain referred down the right arm. This pain seemed to have corresponded to the same type of radicular pain that he described in 1978." (Docket no. 139). Therefore, the approximate onset of the probable low grade right radiculopathy was September 1988. (TR 139). This is consistent with Dr. Roome's October 7, 1988 note that Plaintiff complained of right arm pain and had a pre-existing neck problem but had "been quite asymptomatic for quite sometime." (TR 142).

"Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004). "Record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence relates back to the claimant's limitations prior to the date last insured." *Abney v. Astrue*, 2008 WL 2074011 at *6 (E.D. Ky. May 13, 2008) (citing *Higgs v.*

*Bowen*, 880 F.2d 860, 863 (6th Cir.1988) (medical evidence after date last insured was only minimally probative of claimant's condition before date last insured, so did not affect disability determination) and *Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir.1976) ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time.")). There is no evidence in the doctor's November 23, 1988 notes that the severe right arm pain which Plaintiff complained of had an onset prior to the June 1988 date last insured. The November 1988 exams and the EMG are of little probative value to Plaintiff's impairments during the relevant period.

Arguably the ALJ's opinion is sparse, however, the medical record in this matter is similarly sparse and fails to provide details or objective evidence of the alleged limitations resulting from Plaintiff's impairments. *See generally Abney* at *8 n.1 ( "However, since this Court finds that none of this evidence relates back, any error that the ALJ may have made in not specifying this analysis is harmless, and remand would not be warranted.") (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")); *Heston*, 245 F.3d at 536 ("A review of Dr. Haun's report does not mandate a reversal of the ALJ's determination that Heston was not disabled. Although the ALJ should have included a reference to the report in its findings, the failure to do so, in this case, was harmless error."). The record simply does not contain evidence of impairments or resulting restrictions more severe than those found by the ALJ. "[M]ere diagnoses alone cannot provide sufficient support for an assessment of disabling limitations, unless other clinical evidence related to those diagnoses supports the severity of limitation assessed . . . ." *Nicholas v. Astrue*, 2009 WL 693159 at *10 (M.D.Tenn. Mar. 13, 2009) (citing *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185

(6th Cir.1986)). The ALJ's findings with respect to the medical evidence was based on substantial evidence in the record.

3. *The ALJ's Credibility Assessment*

Defendant argues that Plaintiff is challenging the ALJ's credibility determination. Before moving to the merits of a challenge to the ALJ's credibility determination in this matter, the Court notes that this issue was neither raised nor briefed in Plaintiff's Motion for Summary Judgment. Issues not raised before the District Court are waived on appeal. *See Shramek v. Apfel*, 226 F.3d 809 (7th Cir. 2000). Defendant, however, gives Plaintiff's brief a strained and generous reading. Defendant extrapolates from Plaintiff's allegation that the ALJ presented an improper hypothetical question to the VE an argument by Plaintiff that "the ALJ should have fully credited Plaintiff's claims concerning his pain and side-effects from medication." (Docket no. 10 at 16 of 22).

The "issues" as stated in Plaintiff's Motion for Summary Judgment are the following: "Whether the Commissioner erred as a matter of law in assessing the medical records of evidence and, thereby, formed an inaccurate hypothetical that did not accurately portray Mr. Haynor's impairments." Plaintiff in his prayer for relief asks that the decision "be reversed and the case remanded for further proceedings consistent with the above arguments, specifically to properly and fully evaluate Mr. Haynor's severe impairments and the opinions of his treating physicians." There is no reference to credibility in Plaintiff's statement of the issues. Plaintiff has neither raised nor briefed any issues related to his credibility and despite Defendant's generous reading and full defense of the issue, it is not properly before the Court. To the extent that Plaintiff's statements about his pain and his fatigue related to medication or pain are implicated in the Court's review of the ALJ's step five analysis, those issues will be addressed therein.

4. *Whether The ALJ Relied On An Accurate Hypothetical Question To The Vocational*

16

*Expert*

Plaintiff argues that by failing to properly assess the medical records, the ALJ formed an inaccurate hypothetical question for the vocational expert. Although Plaintiff argues that each element of the hypothetical question "does not accurately describe [Plaintiff] in all significant, relevant respects," Plaintiff in his brief fails to identify any specific limitation which the ALJ failed to consider or include in the hypothetical question. Plaintiff in his brief does, however, quote the following hypothetical question posed by the ALJ to the VE:

> "[Assume that] as a result of pain, medication required for pain and fatigue secondary to pain, that individual cannot sustain sufficient concentration, persistence and pace to do any simple routine tasks on a regular continuing basis. By that, I mean, 8 hours a day, 5 days a week, 40 hours a week." (Docket no. 7 at 11 of 14, TR 234).

The VE testified that there would be no work available for such an individual. (TR 234). For purposes of Plaintiff's Motion for Summary Judgment, the Court will limit its review to this portion of the hypothetical question which is the only particular point raised by Plaintiff with respect to the hypothetical question. The Court will treat these limitations as the limitations which Plaintiff argues were not included in the hypothetical question. *See generally Fore v. Astrue*, 2009 WL 331353 *6 (E.D. Ky. 2009) slip op. ("The claimant . . . has not identified what factors or limitations the ALJ failed to include in his hypothetical questions. Thus, the court will not consider this argument.") (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006)). The Court notes that while the limitations due to pain, medication and fatigue were included in one of the hypothetical questions, they were not adopted by the ALJ and incorporated into the RFC and the ALJ's final findings.

The ALJ pointed out that during the relevant period from January 1983 to June 1988 Plaintiff required very little treatment. (TR 18). Substantial evidence in the record supports this conclusion.

17

As set forth above, the record during that time shows that much of the treatment which Plaintiff sought was related to his peptic ulcer disease and skin conditions. The record during this period does not contain reports of fatigue or side effects as a result of pain medication. The ALJ properly notes that there was no indication that Plaintiff required surgery or had attended a pain clinic. "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong*, 88 Fed. Appx. at 846. Dr. Reddy noted that Plaintiff's "conservative" treatment was effective. (TR 149).

The ALJ found that during the relevant period, Plaintiff had the RFC to perform "sedentary work with no use of either lower extremity for pushing and pulling, including use of foot controls, with no use of vibrating tools and only occasional use of either upper extremity for reaching, handling, grasping and fingering."[4] (TR 17). These findings are supported by substantial evidence in the record and take into account the limited abilities in the upper extremity supported by the 1983 EMG.

The ALJ posed an accurate hypothetical question to the VE containing these limitations and properly relied on the testimony of the VE to determine that during the relevant period Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (TR 19). Substantial evidence supports the ALJ's finding that Plaintiff remained capable of performing a limited range of sedentary work.

---

[4] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.R.F. § 404.1567(a).

18

**VI.     CONCLUSION**

The ALJ's opinion is supported by substantial evidence and there is insufficient evidence in the record for the Court to find otherwise. Defendant's Motion for Summary Judgment (docket no. 10) should be GRANTED, that of Plaintiff (docket no. 7) DENIED and the instant complaint dismissed.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 23, 2009            s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 23, 2009         s/ Lisa C. Bartlett
                                              Courtroom Deputy